[S. F. No. 5334.   Department Two.—May 25, 1911.]

## E. M. GALVIN, Appellant, v. JULIAN LEROY WHITE et al., Respondents.

ADVERSE POSSESSION—QUIETING TITLE—FINDING AGAINST PLAINTIFF.—
In an action to quiet title to a tract of land in the city and county of San Francisco, it is held that the evidence is sufficient to sustain the finding of the court that neither the plaintiff, nor any of his grantees, had ever acquired title to the property by adverse possession, and that the grantee of the plaintiff, by reason of his want of possession, was not a beneficiary under the act of Congress of July 1, 1870.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.   George H. Buck, Judge presiding.

The facts are stated in the opinion of the court.

E. M. Galvin, Appellant, *in pro. per.*

Pringle & Pringle, for Respondent White.

Percy V. Long, for Respondent City and County of San Francisco.

MELVIN, J.—Appeal from a judgment rendered in favor of the defendant White and from an order denying plaintiff's motion for a new trial. The action was one to quiet title to a fifty-vara lot in the city and county of San Francisco.

Plaintiff claimed title through an unrecorded deed from one Thomas Lea, purporting to have been made, executed, and delivered to said Galvin in 1891. The court found that this deed was destroyed by the fire of April 18, 1906. There were also findings that Thomas Lea never entered into possession of the property under claim of title founded upon a written instrument; that said Lea never protected the land by a substantial inclosure; that he never cultivated nor improved it; that neither the plaintiff nor his predecessor had continuously occupied said property for a period of five years; and that neither the plaintiff nor his grantor had paid all the taxes during a period of five years continuously or during any period

of time. The court also found: "That the defendant and his predecessors and grantors were possessed of said property within the times required by the laws of the United States of America, the state of California, and the ordinances of the city and county of San Francisco, from the original location of J. H. Rickett in the year 1849 down to the year 1906"; that defendant had improved the property; had protected it by a substantial inclosure; and had paid all taxes upon said property from the year 1891 to the time of the commencement of the action.

In his motion for a new trial plaintiff introduced an affidavit whereby he asserted that he could prove by certain witnesses that Thomas Lea, his alleged grantor, was in possession of the property here in litigation from 1870 continuously down to the time of his own occupation. His principal excuse for failing to produce said witnesses at the trial was that he had understood the judge who tried the case to express himself as satisfied with the proof which the plaintiff had introduced. An examination of the language used by the court (which also appears by affidavit) convinces us that there was no basis for such belief by plaintiff. At the trial Mr. Pringle, attorney for defendant White, was asked to admit that certain absent persons, if brought into court, would testify substantially to the same facts stated by witnesses who had been examined theretofore in plaintiff's behalf. This he declined to do, and the judge said: "By producing those witnesses and putting them on the stand you would be only accumulating those facts; you have established those facts." Obviously the court was merely calling plaintiff's attention to the circumstance that even if the requested stipulation were made it would have no original force, but would be merely in the nature of cumulative evidence.

Plaintiff's claim of title rests upon the following asserted facts:—

1. That the fifty-vara lot is within that area on Point San Jose or Black Point in the city and county of San Francisco reserved for public purposes by proclamation of the president of United States dated November 6, 1850;

2. That when by act of Congress of July 1, 1870, (ch. 197, [16 Stats. 186],) this land was relinquished to the city and county of San Francisco in trust to convey to actual *bona fide*

possessors such parcels as were severally held by them, Thomas Lea was in such actual *bona fide* possession of the property here in dispute; and

3. That said Thomas Lea had held possession of such lot of land until plaintiff took it under a deed from Lea.

Defendant established a record title deraigned from the preemption claim of J. H. Rickett. His proof of title showed possession by Rickett on or about June 5, 1850, five months before the presidential proclamation upon which plaintiff depends. There was no formal finding that the property was not within the area covered by the said proclamation and the act of 1870 to which we have heretofore referred, but as the court accepted defendant White's proof of title, including certain maps, doubtless the conclusion reached was that the property lay outside of the former reservation by the United States government on Point San Jose and not within that area, as plaintiff attempted to prove, according to a map made by Mr. Riley, who was not an engineer and who admitted that his drawing was made up from information gleaned from a certain "Spring Valley Water Company's map." In admitting this diagram for what it was worth, the court remarked that it had very little value.

There was considerable testimony on both sides with reference to the alleged occupancy of the property by Lea and his widow. Without reviewing it, we simply say that in view of the conflict of testimony there was sufficient evidence to justify the court's conclusion that neither Lea nor his widow nor Galvin ever occupied this lot for a period of five years. For many of the years covered by the statements of the witnesses the streets in the vicinity of this tract were not definitely marked. Some of defendant White's witnesses testified that Lea occupied the fifty-vara lot at the corner of Buchanan and Chestnut streets and not the lot here in litigation, which had frontages on Chestnut Street and Magnolia Avenue, its westerly line being 137 feet 6 inches west of Buchanan Street. It may well have been that, owing to the lack of graded streets in the earlier years, some of the witnesses may have been misled as to the exact location with reference to Buchanan Street of the lot upon which Lea's house stood. But whether such was the fact or not, certain it is that there was abundant testimony to justify the court's conclusion regarding the occu-

pancy of the land in question. Thomas Haley testified that in the latter part of 1870 Lea lived on a fifty-vara lot at the corner of Chestnut and Buchanan streets. True, this was after the act of Congress upon which plaintiff relies, but it is nevertheless significant. W. E. Haley testified that from 1868 to 1878, Mr. Lea lived on a fifty-vara lot at the corner of Buchanan and Chestnut streets, his house being about one hundred feet west of Buchanan Street. C. D. Harper and E. S. Ring, whose recollections extended as far back as 1868, gave similar testimony. But the most significant evidence was that offered by defendant by which it was shown that the fifty-vara lot on the southwest corner of Buchanan and Chestnut streets was conveyed to Thomas Lea by William Barber on March 13, 1863, and that the same William Barber on March 25, 1863, conveyed the adjoining lot, the one in controversy, to S. H. Dwinelle. This is part of the record title now resting in defendant White. It is hardly probable that two men should have bought from the same grantor adjoining property within a fortnight and that one should be maintaining possession of both lots. It was also shown that in 1868 Thomas Lea conveyed the corner lot to Anne Wilson (afterwards his wife). It may be and doubtless is true that Thomas Lea was for many years the only resident on the block of land upon which the lot in question is situated, but this did not constitute possession of the whole block.

It was shown that defendant White by his agent contracted for and paid for the grading of the lot, fenced it, and for more than five years paid all the taxes levied upon it.

Even if it were conceded that the property was in the Point San Jose Military Reservation, the plaintiff having failed, as the court found, to establish possession by Lea of the fifty-vara lot west of the one occupied by him at the corner of Buchanan and Chestnut streets, it follows that Lea was not a beneficiary under the act of Congress of July 1, 1870. Plaintiff under assertion of title as his grantee cannot therefore attack defendant's title or possession collaterally. (*Palmer* v. *Galvin,* 72 Cal. 186, [13 Pac. 476].)

It follows from the foregoing that the judgment and order must be affirmed and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.